Lori G. SCHLEISMAN (now Ruddick), Appellant,

v.

Gorden J. SCHLEISMAN, II, Respondent.

No. WD 56152.

Missouri Court of Appeals, Western District.

April 13, 1999.

Eric M. Landoll, Nevada, for Appellant.

Tina M. Longnecker, Joplin, for Respondent.

Before SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Lori G. Ruddick (formerly Schleisman) appeals from the judgment of the circuit court denying her motion to modify the child support obligation of the respondent, Gorden J. Schleisman, II.

The appellant raises five points on appeal. She claims that the trial court erred in "dismissing" her motion to modify the existing child support order of $0 per month because: (1) there was sufficient evidence to find a substantial and continuing change of circumstances warranting modification pursuant to § 452.370.1 [1] in that she made a *prima facie* case for modification by demonstrating a twenty percent or more change in the existing child support amount, after applying the mandatory child support guidelines; (2) she could not, by law, contract away her children's right to future child support and, as such, was not barred by waiver by acquiescence, laches, or equitable estoppel from seeking future child support; (3) the execution by the respondent of a consent to terminate his parental rights and for future adoption of the parties' children did not, by law, work to terminate his child support obligation; (4) in doing so, the trial court could not rely on the doctrine of *res judicata* in that the respondent did not plead it as an affirmative defense; and (5) in doing so, the trial court could not rely on the doctrine of *res judicata* in that, as a matter of law, the doctrine does not apply to terminate a parent's child support obligation.

We reverse and remand.

1. All statutory references are to RSMo Supp.

## Facts

The marriage of the parties was dissolved on August 21, 1990, in the Circuit Court of Vernon County. Prior to dissolution, the parties entered into a written separation agreement, which addressed all issues relating to child custody, visitation and support, and property division. Pursuant to the separation agreement, as approved by the trial court and incorporated into the dissolution decree, sole custody of the parties' minor children, Jeremy Adam Ruddick (formerly Schleisman) and Abby Lauren Ruddick (formerly Schleisman), was awarded to the appellant, subject to the respondent's right to reasonable visitation. The respondent was ordered to pay child support in the amount of $125 per month for each child for six months and $150 per month thereafter.

In December 1990, the respondent contacted the appellant and told her that he was having financial difficulties and was unable to pay his child support. As a result, the parties entered into a stipulation for modification of the decree as to visitation and child support, whereby the parties agreed that the respondent would not exercise his right to visitation and in return would not have to pay any child support. The respondent also executed a consent to termination of parental rights and for future adoption. On February 1, 1991, the stipulated modification was approved by the trial court. The decree was modified to provide, in pertinent part:

1. Paragraph 2 of the Judgment Entry of August 21, 1990 is hereby deleted and in lieu thereof the following paragraph is inserted:

Petitioner is awarded sole and absolute custody of the two minor children born of the marriage, to-wit: Jeremy Adam Schleisman and Abby Lauren Schleisman. Petitioner has the absolute right to relocate notwithstanding any provisions of the Separation Agreement to the contrary. The Court finds that visitation by Respondent would not serve the best interest[s] of the children and that visitation would endanger the children's physical health and impair their emotional development as provided in Section 452.400, RSMo.1986, as

1997, unless otherwise indicated.

amended. Accordingly, Respondent is denied visitation with the children.

The modified decree also provided that the respondent did not have to pay any child support. The consent to termination of parental rights and for adoption was never filed with or acted upon by the trial court or any other court. Subsequent to this modification, the appellant had the children's surname changed from Schleisman to her maiden name of Ruddick.

Pursuant to the modified decree, the respondent had no regular or meaningful contact with the children and paid no child support from February 1991 until June 1998. In November 1997, the appellant filed a motion to modify child support alleging that a substantial and continuing change of circumstances had occurred since the previous modification. Specifically, she alleged that there had been a substantial increase in the cost of raising the children and a substantial increase in the respondent's income. As such, she alleged that modification was appropriate because the Form 14 presumed correct child support amount (PCCSA) was at least twenty percent greater than the existing award.

The appellant's motion to modify child support was set for hearing on June 18, 1998. At the hearing, the appellant presented evidence as to the cost of raising the children, her present income, and the respondent's present income. She also submitted a completed Form 14. At the close of the appellant's evidence, the respondent made an oral motion to dismiss based on the previous stipulated modification and his consent to terminate parental rights and for future adoption. The respondent did not submit a completed Form 14. In sustaining the respondent's motion to dismiss, the trial court found, *inter alia*, that no change of circumstances had occurred since the previous modification which had not been reasonably anticipated at the time of the modification. However, the trial court did not complete a Form 14 or make any findings as to the Form 14 submitted by the appellant. The court also found that the children were not suffering from any lack of financial support from the respondent and that resuming the relationship between the children and him would not be beneficial

to them. The court further stated its belief that the modification was barred by "equitable estoppel or collateral estoppel or res judicata or laches or whatever."

The appellant filed her notice of appeal on June 28, 1998, attaching the docket sheet of the trial court as the "judgment" appealed from. However, on August 7, 1998, this court advised her by letter that no final, appealable judgment had been entered and that the appeal would be dismissed. Thereafter, on August 12, 1998, the appellant filed her suggestions in opposition to the dismissal of her appeal, attaching a written judgment entry signed by the trial court and dated August 3, 1998, denying her motion to modify child support, as the judgment from which she was appealing. Accordingly, her appeal was allowed to proceed.

## Standard of Review

■ In determining our standard of review, we note that, although the record reflects that the trial court "denied" the appellant's motion to modify support, the appellant, in her points relied on, challenges the "dismissal" of her motion. In this respect, the record reflects that the dismissal referenced by the appellant in her points relied on results from the fact that the respondent made an oral motion to dismiss at the close of the appellant's evidence, in response to which the trial court "denied" her motion. Regardless of the term employed by the trial court in response to the respondent's motion, in a court-tried case, whether in an action at law or in equity, a motion to dismiss made at the close of the plaintiff's or petitioner's case is treated as a submission on the merits, requiring the court to determine credibility of the witnesses and to weigh the evidence. *Ayers v. Myers*, 939 S.W.2d 447, 449 (Mo.App.1996); *Wyrozynski v. Nichols*, 752 S.W.2d 433, 436–37 (Mo.App.1988). Accordingly, we will affirm the judgment of the trial court here in "denying" the appellant's motion to modify child support, unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ayers*, 939

S.W.2d at 449. In our review, we must view the evidence in the light most favorable to the judgment. *Id.*

### I.

Appellant's Points II, IV and V deal with the related issues of whether her motion to modify child support was barred from being brought pursuant to the parties' agreement as to the 1991 modification and the application of the doctrines of waiver by acquiescence, laches, equitable estoppel, and *res judicata.* In these points, she claims that to the extent the trial court relied on the parties' agreement and the stated doctrines to dismiss her motion, it erred. If we find that such reliance by the trial court in dismissing the appellant's motion was not error, then we need not address the appellant's remaining points. For this reason and because all three points are inextricably intertwined, we will first address the appellant's Points II, IV and V together.

■ In Point IV, the appellant claims that the doctrine of *res judicata* did not apply because it was not properly pled. In Points II and V, she claims that the doctrines of waiver by acquiescence, laches, equitable estoppel, and *res judicata* did not apply to terminate the respondent's child support obligation in that, under the law of this state, support awards remain subject to future modification by the trial court, regardless of court-approved agreements by the parents to the contrary. We agree.

■ At the close of the appellant's evidence, the respondent's attorney made the following oral motion to dismiss:

MS. LONGNECKER: Your Honor, at this time the Respondent, Gorden J. Schleisman, would move that the motion for modification as filed by Lori J. Schleisman be dismissed. This is premised on the factor that on February the 1 st, 1991, there was a stipulation for modification and—signed by both parties, in addition to a consent to termination of parental rights and consent to adoption. And therefore there is no duty of support owing from Mr. Schleisman to Ms. Ruddick.

On appeal, unless the trial court specifies the reason or reasons for sustaining a motion to dismiss, we presume that the dismissal was on one or more of the grounds specified in the motion. *Terre Du Lac Ass'n v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 211 (Mo.App.1987). As to the ground or grounds on which the trial court, here, relied in sustaining the respondent's motion to dismiss, the trial court stated, in pertinent part:

And I don't think a finding that no child support is due at this point is—makes it non-modifiable. . . .

I've seen the parties try the standard one, "Well, you don't bother me and I won't try to get child support." And that goes on for a long time that there is no modifications. Those aren't enforceable. And general rule, sometimes there is a waiver or acquiesced [sic] and we can't get the retro. But here we had a stipulation that not only two thing[s]—not only that he owed no child support but that visitation and contact with him would be—endanger the children's physical health and emotional development. . . .

And this—Domestic relations courts are supposed to be courts of equity. And here we have a gentleman who, at that point in time at least for whatever reason, was down on his luck. The lady had a lucrative income, a family being represented by one of the prominent attorneys in Nevada. . . .

The—One of the things that has been a large issue in the domestic relations field for the last several years is this question of visitation, enforcement of visitation, enforcement of child support. And the— This time I—Either the legislature passed or seriously considered some sort of modification of that—of the law along those lines in terms of making it equally—the— making them more tied together like people have tried to do for years.

I think if the shoe was reversed—I've heard—Also, if he was coming in here asking for visitation, we would probably be hearing that he doesn't need visitation, that it would be detrimental. I've heard no evidence really that it—anything that— why it was determined back then it was

detrimental to the children to have visitation.

And she didn't—And the Petitioner didn't come in and ask to give him visitation and reciprocity. She makes the statement that she tried to arrange some visitation which have would been [sic] in—actually contravention of the existing order that the child needed a father figure, whatever that means. And the equity is just all—There's no showing that the children are in any kind of need and being deprived.

There is no showing that resuming their relationship would be beneficial to the children. There is no request to resume the relationship with the children other than to just pay. And I don't know whether we're talking equitable estoppel or collateral estoppel or res judicata or laches or whatever, but at this point in time I think I'm going to deny the motion to modify.

From this, it is not at all clear how or why the trial court believed that the stated doctrines would apply. Without any explanation on the record, we can only speculate that the trial court believed, as the respondent contends in his brief, that the 1991 modification, including the agreement and actions of the parties, worked to invoke these doctrines to terminate the respondent's child support obligation.

■ As to why he believes the trial court did not err in dismissing the appellant's motion, the respondent first contends that the court, in the 1991 modification proceeding, ordered his child support obligation "terminated." We disagree. In making this contention, the respondent confuses a modification "terminating" his child support obligation with modification providing that he pay no support, given the existing circumstances. Termination has the effect of relieving an obligor from having to pay future child support, regardless of a change of circumstances. As to termination, § 452.340 sets forth the instances under which a parent's child support obligation terminates.[2] None of the instances set forth in the statute exist here. Unlike a modification terminating child support, a modification ordering no support, as in the instant case, relieves only the obligor from paying support until there is a substantial and continuing change of circumstances, rendering the terms of the $0 order of support unreasonable, requiring a modification awarding some amount of support. § 452.370.1.

■ As to modifications of support orders, § 452.370 governs and provides, in pertinent part, that the "court shall have continuing personal jurisdiction over both the obligee and the obligor of a court order for child support ... for the purpose of modifying such order." § 452.370.6. With respect to this provision, in *Kocherov v. Kocherov*, 775 S.W.2d 539 (Mo.App.1989), this court, quoting *Williams v. Williams*, 542 S.W.2d 563, 566[1–3] (Mo.App.1976), recognized that "[e]ven though the terms of a separation agreement with regard to child support are adopted by the court and incorporated into a divorce decree, the court is not deprived of its authority to thereafter modify such support award, as changed conditions may warrant." *Id.* at 540. Hence, the law is well settled that, although the trial court may have previously ordered that a parent not pay any future child support, based on an agreement of the parties to that effect, which agreement was adopted and incorporated in the judgment of modification, and on the circumstances then existing, such an order does not terminate the court's continuing

---

**2.** Section 452.340 governs the termination of child support. It provides, in pertinent part, as follows:

3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:
   (1) Dies;
   (2) Marries;
   (3) Enters active duty in the military;
   (4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent; or
   (5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply.
   Subsection 4 deals with physically or mentally incapacitated children. Subsection 5 deals with children who are enrolled and attending a secondary school program.

jurisdiction to later modify its decree and order child support, as changed circumstances may dictate. *Id.; McCreary v. McCreary,* 954 S.W.2d 433, 451–52 (Mo.App. 1997).

Here, the agreement of the parties as to the 1991 modification was adopted by the court and incorporated in its decree, providing, *inter alia,* that the respondent pay no support. This constituted a modification of the respondent's child support obligation, based on the circumstances as they existed at that time. The effect of the modification was to reduce the respondent's child support obligation from $300 to $0 per month, which, pursuant to § 452.370, was to remain in effect until there was a showing of a substantial and continuing change of circumstances making it unreasonable and requiring further modification. By law, the 1991 modification, incorporating the agreement of the parties, did not "terminate" the respondent's child support obligation so as to deprive the trial court of its continuing jurisdiction to further modify its decree to require him to pay child support in the future, as he contends. *Kocherov,* 775 S.W.2d at 540; *McCreary,* 954 S.W.2d at 451–52. Thus, to the extent the trial court dismissed the appellant's motion to modify based on the parties' agreement as to the 1991 modification, it erred.

■ The respondent next contends that the trial court did not err in that, under principles of equity, the appellant was barred from seeking child support from him. Specifically, he contends that her motion to modify was barred in that, in reliance on not being required to pay child support, he: (1) agreed to the trial court's ordering him not to have contact with the children, as being detrimental to their welfare; (2) agreed to have their names changed; and (3) signed a consent for termination of his parental rights and for future adoption. We find no support in the law for this contention.

■ The equitable doctrines of waiver by acquiescence, laches, and equitable estoppel, may, in certain limited circumstances, bar an obligee from seeking payment of *past due* child support that was not paid pursuant to some agreement between the parties. *See Sagos v. Sagos,* 729 S.W.2d 76, 80 (Mo.App.

1987) (holding that the defense of waiver by acquiescence may apply to bar the payment of child support already accrued, but not the payment of future support); *Dablemont v. McMinn,* 691 S.W.2d 490, 491 (Mo.App.1985) (holding that defense of waiver by acquiescence would apply to bar full payment of past due child support, but not future support, where the parties had agreed extrajudicially to payment of a lesser amount of support in return for the father's relinquishment of visitation rights); *Grommet v. Grommet,* 714 S.W.2d 747, 749–50 (Mo.App.1986) (*construing Rodgers v. Rodgers,* 505 S.W.2d 138, 145–46 (Mo.App.1974) in holding that waiver by acquiescence and equitable estoppel could be a defense to payment of past due support, but not as to future support). These cases teach us that, although the equitable doctrines in question, based on an agreement and actions of the parties, may apply to prevent an injustice to the obligor in payment of his or her past due court-ordered child support, the same is not true of future support. As such, the holdings in these cases do not help the respondent in that, here, the appellant was not seeking the payment of past due child support, but was seeking only to modify the existing award to provide for future support. Hence, to the extent the trial court relied on the doctrines of waiver by acquiescence, laches, and equitable estoppel in dismissing the appellant's motion to modify, it erred.

■ Finally, as to the trial court's reliance on the doctrines of *res judicata* or collateral estoppel to dismiss the appellant's motion to modify, the law is well settled that they do not apply to child support orders where a substantial and continuing change of circumstances, rendering their terms unreasonable, is shown, requiring modification. § 452.370.1; *McKenna v. McKenna,* 928 S.W.2d 910, 913–14 (Mo.App.1996). Thus, it was error for the trial court to dismiss the appellant's motion to modify future child support in reliance on these doctrines and based on past circumstances.

The fact that we have determined that the trial court erred in dismissing the appellant's motion to modify in reliance on the parties'

agreement concerning the 1991 modification and the application of the doctrines discussed, *supra*, does not end our inquiry in that we are required to affirm the decision of the trial court on any reasonable basis. *State ex rel. Dep't of Social Servs. v. Maher*, 976 S.W.2d 75, 77 (Mo.App.1998). Consequently, we must address the other bases the respondent asserts were sufficient to support the trial court's denial of the appellant's motion to modify.

## II.

Logically, we next address appellant's Point III, wherein she claims that the trial court erred in dismissing her motion to modify based on the respondent's execution of a consent to terminate his parental rights and for future adoption because his parental rights were never judicially terminated and the children were never actually adopted. We agree.

Although as previously stated, it is not clear from the record on what basis the trial court actually dismissed or denied the appellant's motion with respect to the consent executed by the respondent, as to this issue, the trial court did make the following statement on the record:

> I don't think the consent to termination of parental rights terminates the obligations. I think you're right, it's in fact, the adoption. . . .
>
> But here we had a stipulation that not only two thing[s]—not only that he owed no child support but that visitation and contact with him would be—endanger the children's physical health and impair their emotional development.
>
> And they stipulated to that and then modification was entered and it denied him visitation. And it also denied him any contact with the children. And as—I think the order entered February 1 st, '91 was a stipulation that—Let's see. Judgment entered is also signed on—I think that, particularly after the expiration of a year or so, would have give[n]—without the consent to adoption, would give the Petitioner the option—the ability to come in and get the—his—the Respondent's parental rights terminated and adopt the child.

It might not have waived the notice requirement, which the consent to adoption did waive notice. And we had seven years of no attempt or contact. We have really no showing of unchange[d]—of changed circumstances that wouldn't be reasonably anticipated.

From this, it appears that, although the trial court did not believe that the respondent's consent to terminate his parental rights and for future adoption was in and of itself sufficient to terminate his child support obligation, the execution of the document did influence its decision. As such, we will address the arguments of the parties on this issue.

The respondent contends that the 1991 modification was in and of itself sufficient to terminate his parental rights without the necessity of consent. In making this argument, he relies on the language in the 1991 judgment of modification stating that visitation with him would endanger the children's physical health and impair their emotional development. He further argues that he consented to terminate his parental rights, and waived his right to be notified of and consented to the future adoption of the children as consideration for the termination of his child support obligation. This argument is without merit.

■ It is axiomatic that a parent's duty to support his or her child is terminated upon the termination of his or her parental rights or the adoption of the child, adoption by definition including termination of parental rights. *See Zweifel v. Ahland*, 718 S.W.2d 660, 661 (Mo.App.1986) (holding that a parent's duty of child support terminates upon the termination of the parent's parental rights). However, this is not the issue presented. The issue presented is whether a parent's consent to terminate parental rights and for future adoption, without subsequent court approval, is sufficient to terminate his or her child support obligation.

■ A parent can consent to the termination of his or her parental rights. § 211.444. The parent can also waive his or her right to be notified of and consent to the adoption of his or her children. § 453.050,

RSMo 1994. However, a parent cannot unilaterally terminate his or her parental rights or waive his or her right to consent to an adoption. To effectuate a voluntary termination of parental rights, a petition must be filed with the juvenile court by the juvenile officer, § 211.444, the court must conduct a dispositional hearing, § 211.459, RSMo 1994, a guardian *ad litem* must be appointed to represent the children, § 211.462, RSMo 1994, the court must find that such termination is in the best interests of the children, § 211.444, and an order of termination must be entered. § 211.477, RSMo 1994. To effectuate a waiver of the right to consent to adoption, a parent must apply to and receive the approval of the juvenile court. § 453.050, RSMo 1994. None of these procedures were followed in the instant case. As such, there was no judicial termination of the respondent's parental rights or waiver of his right to consent to the future adoption of his children.

■■■■ The findings made by the trial court in the 1991 modification were made pursuant to § 452.400, which were the findings required to deny a parent his or her right to reasonable visitation, which, unlike a termination of parental rights or a waiver of consent to adoption, was subject to future modification. § 452.400.2. As such, the 1991 modification, despite its recital that contact with the respondent would be detrimental to the children, was neither legally sufficient to terminate the respondent's parental rights nor waive his consent to the future adoption of the children. Moreover, courts do not generally allow the voluntary termination of parental rights solely to allow a parent to avoid his or her financial obligations to his or her children. *See State of Washington ex rel. Lewis v. Collis,* 963 S.W.2d 700, 704 (Mo.App.1998); *In re R.A.S.,* 826 S.W.2d 397, 401 (Mo.App.1992); *In re B.L.G.,* 731 S.W.2d 492, 499 (Mo.App.1987). "The duty of support is one 'imposed by law and cannot be bargained away nor escaped through the device of contracting....'" *R.A.S.,* 826 S.W.2d at 401 (citation omitted).

For the reasons stated, we find that the respondent's child support obligation was not terminated by his consent to the termination of his parental rights and future adoption. Thus, to the extent the trial court relied on his consent in dismissing the appellant's motion to modify child support, it erred.

Having disposed of the appellant's Point III does not end our inquiry in that we would still be required to affirm the trial court's denial of her motion to modify on any reasonable basis. *Maher,* 976 S.W.2d at 77. Thus, unless the record supports a finding of a substantial and continuing change of circumstances, § 452.370, warranting a modification, which is dealt with in appellant's Point I, and we discuss, *infra,* we would still be required to affirm.

### III.

■■■■ In her Point I, the appellant claims that the trial court erred in "dismissing" her motion to modify the respondent's child support obligation because there was sufficient evidence to find a substantial and continuing change of circumstances warranting modification pursuant to § 452.370.1. Under this statute, a *prima facie* showing of a substantial and continuing change in circumstances, supporting a modification of child support, can be made by demonstrating a twenty percent or more change in the child support amount since the prior decree. § 452.370.1. This forms the basis of the appellant's claim, that her Form 14 established a twenty percent or more change in the child support amount since the prior decree, and thus, she had presented sufficient evidence of a substantial and continuing change in circumstances that would have defeated respondent's motion to dismiss. We agree.

■■■■ The use of Form 14 in calculating child support in a modification proceeding is mandatory. *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. *banc* 1997); *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App.1996).

[U]nder Rule 88.01 the trial court in all cases involving the award of child support is required to determine and find for the record the presumed correct child support amount calculated pursuant to Civil Procedure Form No. 14. The determination and finding of the amount can be done by either accepting for the record a Form 14

 

amount calculated by a party, or in the event it "rejects" the Form 14 amounts of the parties as being incorrect, doing its own Form 14 calculation.

*Woolridge,* 915 S.W.2d at 381–82. In this case, the appellant submitted her Form 14 to the trial court as required, which reflected a PCCSA of $568 per month and was at least twenty percent greater than the existing child support amount of $0. On the other hand, the respondent did not submit a Form 14. In its judgment, the trial court denied the appellant's motion to modify, finding that there had not been a substantial and continuing change of circumstances. However, it did not determine for the record the PCCSA as calculated pursuant to Form 14.

Given the fact that the appellant's Form 14, on its face, demonstrated a twenty percent change in the existing child support amount, in order to deny her motion on the merits for failing to show a substantial and continuing change of circumstances, the trial court either had to have rejected her Form 14 PCCSA or accepted it, but then rebutted it as being unjust and inappropriate. Because the trial court failed to make the Form 14 findings as required by *Woolridge* and as approved in *Neal,* we are unable to discern from the record what occurred. As such, we cannot conduct meaningful appellate review to determine whether there was a change of twenty percent or more in the child support amount since the prior decree, or in other words, whether there was a substantial and continuing change of circumstances requiring a modification of child support, as alleged by the appellant. *Gibson v. Gibson,* 946 S.W.2d 6, 9 (Mo.App.1997). In light of this fact, to the extent the trial court denied the appellant's motion on the basis that the evidence was insufficient to establish a substantial and continuing change of circumstances, it misapplied the law in failing to follow the *Woolridge* procedure, requiring us to reverse and remand. *Id.*

### Conclusion

The judgment of the trial court dismissing or denying the appellant's motion to modify the respondent's child support obligation is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.