Ella Louan TALLEY, Petitioner–Appellant,

v.

Charles Eugene BULEN, Jr., Respondent–Respondent.

No. 27219.

Missouri Court of Appeals, Southern District, Division Two.

June 27, 2006.

Richard L. Schnake, Neale & Newman, Springfield, for appellant.

Richard Bender, Springfield, for respondent.

KENNETH W. SHRUM, Presiding Judge.

The marriage of Ellen Louan Talley ("Mother") and Charles Eugene Bulen, Jr. ("Father") ended via a 1996 dissolution decree. This case is the third effort to modify that decree. The first two modifi- cation motions were ruled on in 1997 and 1998. This appeal filed by Mother is from a judgment that, *inter alia,* denied her latest motion (filed in 2004) in which she asked that Father's child support obli- gation be raised from $550 to $993 per month. We affirm.

## STANDARD OF REVIEW

We will affirm a trial court's ruling on a motion to modify child support unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hern v. Hern,* 173 S.W.3d 653, 655[1] (Mo. App.2005). A child support award "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreason- able." § 452.370.1.[1]

The child support modification stat- ute further provides:

"If the application of the child support guidelines and criteria set forth in sec- tion 452.340 and applicable supreme court rules to the financial circum- stances of the parties would result in a change of child support from the exist- ing amount by twenty percent or more, a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable, if the existing amount was based upon the presumed amount pursuant to the child support guidelines."

§ 452.370.1. On the other hand, if this statutory presumption does not apply, i.e., where the previous order was not based on the support guidelines, a moving party must submit other evidence showing a sub- stantial and continuing change of circum- stances, such as changes in the parents'

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

respective financial statuses and changes in the child's needs. *Eaton v. Bell*, 127 S.W.3d 690, 697[13] (Mo.App.2004).

## FACTS

As previously stated, there were two earlier modifications of the decree, one in 1997 and one in September 1998. In the latter modification the court accepted the parties' "stipulated parenting plan" as being in the best interests of the two minor children, Afton and Chelsea. By that plan, the parties shared "joint legal and physical custody" of the children with Father having custody every other weekend, certain holidays, and "every other week" during the summer months.

As to child support, the parties' parenting plan included this: "The parties agree that the Form 14 calculation attached hereto is in the best interest of the minor children and that [Father] should pay ... $550.00 per month.... Child support to abate by 1/2 for months of June, July and August."

In accepting the support agreement, the court found the following:

"The Court further finds that the presumed correct child support amount as calculated by the parties pursuant to Section 452.340 R.S.Mo 1998, Supreme Court Rule 88.01, and Civil Procedure Form 14 is $550.00 per month.... However, the Court finds that it is *appropriate and just* for child support to abate by one-half during the months of June, July and August each year as [Father] will have temporary custody of the children one half of the days during each of those three months." (Emphasis added.)

Mother's 2004 motion to modify (the subject of this appeal) sought to have Father's scheduled summer child custody reduced to one week per month. Additionally, Mother moved to increase child support to $993 per month. To support the requested increase, Mother alleged that expenses for the children had increased, Father's salary had increased, and her income had decreased.

At the evidentiary hearing, Mother's evidence about increased expenses for the children was scant at best. She claimed the following expenses: (1) $6400 for Afton's car, insurance, and repairs (although she never revealed the period over which she made the expenditures and never said how much of the costs would be recurring); (2) $28.33 per month for extracurricular activities; (3) $200 for Afton's class ring (of which Father paid $75); and (4) other miscellaneous expenditures (4 gowns, 1 cheerleading camp, school lunches, and certain medical expenses). Mother, however, provided no monetary values for the latter expenses.

Father testified he made similar expenditures for the children, yet he never delineated the exact amounts spent, much like Mother's evidence. He also testified that he believed it to be in Afton's best interests if she paid for her own car, i.e., "to learn the meaning of money and responsibility," although he did give her gas money. Because Afton was seventeen years old and able to make her own decisions, Father admitted that she likely would not be visiting him "every other week" during the summer months and acquiesced to her wishes.

After hearing the evidence, the court found a substantial and continuing change of circumstances existed, but only to the extent that Afton was not going to be visiting Father every other week during the summer. The court further found that Mother failed to prove other substantial and continuing changes, namely, the increased expenses for the children. The court specifically noted that the previous child support order deviated from the

guidelines; consequently, Mother was unable to rely on the statutory presumption of substantial and continuing change, even though she showed more than a twenty percent increase per Form 14.

Finally, in determining what the appropriate child support amount should be, the court accepted Mother's Form 14, but found that the use thereof would be unjust and inappropriate. With that finding in place, the court then accepted the amount previously awarded ($550 per month) as the correct figure and terminated the one-half summer abatement because Afton was not going to be spending the summers with Father. In essence, then, the court simply raised the previous order by $68.75 per month.[2] This appeal by Mother followed.

## DISCUSSION AND DECISION

Mother's only point relied on charges the trial court erred when it failed to increase the child support order to her requested amount of $993 per month. Her attack on the judgment is two-pronged. The first part of her argument focuses on the court's finding that the previous child support judgment deviated from the presumed child support amount ("PCSA"). By making this finding, Mother claims that the trial court denied her the ability to rely on the statutory presumption of a continuing and substantial change that arises when a twenty percent change is shown via the Form 14. The second part of her point maintains that even if this presumption is disregarded, her evidence still showed a substantial and continuing change justifying an increase in child support.

The twenty percent provision in section 452.370.1 is inapplicable when the existing child support amount is not based upon the presumed amount under the child support guidelines. *Eaton*, 127 S.W.3d at 697. "The amount calculated pursuant to Form 14 is presumed to be the amount of child support to be awarded, and any award that deviates from that presumed amount must be supported by a specific finding on the record that the amount so calculated is unjust or inappropriate." *Romkema v. Romkema*, 918 S.W.2d 294, 297[4] (Mo. App.1996). Thus, when a trial court deviates from the PCSA, then, *a fortiori*, the amount awarded is not "based upon the presumed amount pursuant to the child support guidelines." § 452.370.1. Mother does not argue otherwise.

Mother, instead, argues that the previous award did not deviate from the guidelines, but was expressly based upon them. Mother continues by saying:

"A court may deviate from the Form 14 guidelines amount only if it finds that amount to be *inappropriate or unjust*, and a deviation without that finding is ineffective. The abatement order rested on the parties' stipulation, premised on [Father] having the children half of the time in those months. Hence the court said that abatement would be 'appropriate and just'—*not* that requiring [Father] to pay $550 in those months would be *inappropriate or unjust*. ... The trial court did not seek to deviate from Form 14, but simply to give effect to the parties' agreement."

■ Mother's argument is nothing more than semantics. Although the 1998 child support judgment was initially based on the parties' agreed upon Form 14, the

---

2. This figure is calculated as: $550 (child support per month) divided by 2 (one half abatement) = $275 (per month) multiplied by 3 months (June, July, and August) = $825 (extra to Mother per year) divided by 12 months = $68.75 (extra to Mother per month).

court specifically found that it would be "appropriate and just" to deviate downward ($275 per month for June, July, and August) because Father would have the children one-half of the time during the summer. To argue this was not a "deviation" because the court did not use the terms "unjust" or "inappropriate" is to ignore the law. This follows for two reasons.

First, in 1998, the Form 14 had no Line 11 adjustment for expenses "by the parent obligated to pay support during periods of overnight visitation or custody" as the current version contains. Instead, the 1998 "Comments for Use" stated: "A *deviation* from the presumed child support amount may be appropriate when an award of custody ... results in the child or children spending substantially equal time with both parents. No specific amount of time is required for a deviation to be appropriate." (Emphasis added) Comments for Use (D) (1998). This is precisely what the 1998 judgment did, i.e., it deviated from the PCSA during the time in which Father had the children on an equal basis as Mother. *See also Brown v. Childress*, 41 S.W.3d 926, 928 (Mo.App.2001).

■ Second, simply because the 1998 court did not use the terms "inappropriate" or "unjust" does not preclude a finding that the court intended a deviation. Although the 1998 court used the terms "appropriate and just" in finding the necessity to deviate, the failure to use the exact terminology (inappropriate or unjust) does not equate to an "ineffective" deviation as Mother argues.

For instance, appellate courts have upheld deviations from the PCSA even though the trial court never made the explicit finding that the award was "inappropriate or unjust." *Leahy v. Leahy*, 858 S.W.2d 221, 225 (Mo.banc 1993) (trial court's finding that reasonable needs were greater than PCSA was "in substance" a specific finding of unjust or inappropriate); *DeCapo v. DeCapo*, 915 S.W.2d 343, 347 (Mo.App.1996) (trial court's award of additional sums for education was implicit finding of unjust or inappropriate even though it explicitly found that PCSA was just and proper); *In re Marriage of Short*, 847 S.W.2d 158, 165 (Mo.App.1993) ("trial court's finding that it would be reasonable to deviate from the [PCSA] is an unmistakable signal that the trial court concluded the [PCSA] would be inappropriate"). In sum, the words "unjust or inappropriate" are not sacrosanct and their use is not mandated if the court's meaning is clear.

Here, when the court found that a deviation for three months was "appropriate and just," it was unmistakable that the court concluded that the PCSA was unjust or inappropriate. *Leahy*, 858 S.W.2d at 225; *DeCapo*, 915 S.W.2d at 347; *Short*, 847 S.W.2d at 165. The first part of Mother's argument that the previous order was not a deviation from the PCSA is rejected.

■ Based on this finding, Mother was not entitled to rely on the statutory presumption when she showed a twenty percent increase in the PCSA. Therefore, she was required to adduce other evidence that showed a substantial and continuing change of circumstances that would warrant a modification. In the second part of Mother's point, she argues that she met this burden.

■ Initially, we must explain what the court did here and what Mother challenges on appeal. The trial court found that a substantial and continuing change of circumstances existed, namely, that Afton did not intend to spend the summers with Father anymore. Because this threshold burden had been met, the court was required to either accept one party's Form 14 or calculate its own. *Glass v. Glass*,

105 S.W.3d 865, 867 (Mo.App.2003). Here, the court accepted Mother's Form 14 as the PCSA, but "rebutted" her form and deviated downward. *Woolridge v. Woolridge,* 915 S.W.2d 372, 380–83 (Mo.App. 1996). Mother has not challenged the correctness of these rulings.[3] It appears that Mother makes only one challenge in this prong of her point. She argues that the court should have found that her evidence (increased expenses, increased income of Father, and decreased income of Mother) was sufficient to constitute a substantial and continuing change of circumstances that supported modifying the 1998 child support award to $993 per month.

"A child support award is limited to the demonstrable financial needs of the child." *Windsor v. Windsor,* 166 S.W.3d 623, 635[19] (Mo.App.2005). Child support orders are not intended to provide a parent the means to accumulate capital. *Id.* at 635[20]. As such, "the fact that a parent can pay more than the demonstrable financial needs of the child is not, in and of itself, a basis for increasing a child support award.... There would also have to be evidence that the financial needs of the child exceeded the PCSA." *Id.* at 635[21]. Simply stated, absent proof of increased expenses of the children, the changes in income of Mother and Father are irrelevant. *Brooks v. Brooks,* 871 S.W.2d 42, 45[4] (Mo.App.1993).

Therefore, the only remaining question is whether Mother's evidence of increased expenses was sufficient to prove a substantial continuing change of circumstances to the extent that increased child support was mandated as a matter of law. The trial court explicitly found that she failed to meet her burden of proof in that respect.

The trial court was free to believe or disbelieve all, part, or none of Mother's claimed expenses for the children. *Lee v. Gornbein,* 124 S.W.3d 52, 61 (Mo.App. 2004). This well-known principle of law is particularly apropos when, as here, Mother's testimony regarding the expenses was vague, imprecise, and minimal. For instance, some of the expenses (gowns, camps, and class ring) were shared by Father. Testimony as to these costs would provide no basis to increase Father's child support obligation. Similarly, Mother claimed $28.33 per month for extracurricular activities, but never testified exactly what this entailed. Going further, we note Mother testified that certain expenditures (lunches and medical expenses) actually *decreased.* Arguably, the only evidence Mother adduced to meet her burden related to Afton's car. But, one-time expenditures do not constitute a *continuing* change. *See, e.g., Brooks,* 871 S.W.2d at 45. On the same note, Mother never

---

**3.** Mother fails to raise as error the *manner* in which the court decided to modify the previous support order, i.e., accepting Mother's Form 14 and deviating downward on the basis that she failed to adduce sufficient evidence of increased expenses. Arguably, the correct procedural path was to (1) reject Mother's Form 14, (2) keep the previous support order in place, and (3) delete the support abatement because Afton would not be spending every other week during the summer with Father. *Mother does not,* however, challenge as erroneous the trial court's procedure.

As we understand it, Mother argues only this: (1) because the court failed to give her

the benefit of the twenty percent statutory presumption, she was required to adduce additional evidence of "substantial and continuing change;" (2) she adduced such evidence and (3) the court erred when it failed to accept that evidence. Because Mother has framed her argument thusly, we decide the case on the basis of what she has raised. This court will not become an advocate and make an argument for Mother. *City of Plattsburg v. Davison,* 176 S.W.3d 164, 170 (Mo.App.2005). Moreover, we will affirm a trial court's judgment when it reaches the right result even if a wrong reason is given. *Clippard v. Pfefferkorn,* 168 S.W.3d 616, 618 (Mo.App.2005).

testified what car costs and what amounts would be continuing such as insurance or repairs.[4] Essentially, Mother totally failed to adduce sufficient evidence of increased expenses of the children to show a modification was necessary. Point denied.

The judgment of the trial court is affirmed.

GARRISON, J., and BATES, C.J., concur.

---

4. Although Mother included certain insurance costs on her income and expense statement, this document was not introduced into evidence at the hearing. We further note here that this opinion should not be read as advocating that giving a child a car is a reasonable and necessary expense or in a child's best interests. Father testified that he did not believe such an expense was in Afton's best interests, and the court was free to accept such testimony.