328 S.W.3d 753 (2010)
In re The MARRIAGE OF: Cindy A. ANGELL and Donald C. Angell.
Cindy A. Bauer, f.k.a. Cindy A. Angell, Petitioner-Respondent,
v.
Donald C. Angell, Respondent-Appellant.
No. SD 30114.
Missouri Court of Appeals, Southern District, Division One.
December 16, 2010.
*754 James R. Sharp, Springfield, MO, for appellant.
Charles (Ed) Lee, Springfield, MO, for respondent.
DON E. BURRELL, Judge.
Donald C. Angell ("Father") appeals a modification judgment that increased his court-ordered child support from $650 per month to $1,200 per month. Father challenges the judgment in two points relied on that claim: 1) no substantial evidence supported the trial court's finding that a substantial and continuing change of circumstances had occurred since the time of the court's prior decree; and 2) the monthly income attributed to Father was not supported by substantial evidence and was based on a misapplication of the law in that his necessary business expenses were not deducted from his gross income.
Because the evidence that the child of the parties ("Child") had a significant and ongoing need for professional counseling and medication constituted substantial evidence of a substantial and continuing change in Child's circumstances since the time of the divorce, and the trial court properly applied the law in calculating Father's income, we affirm the trial court's modification judgment.[1]

*755 Factual and Procedural Background
The facts presented here are in accordance with our standard of reviewthe facts, and the reasonable inferences drawn therefrom, are viewed in the light most favorable to the judgment. Selby v. Smith, 193 S.W.3d 819, 824 (Mo.App. S.D. 2006). Father and Cindy A. Bauer ("Mother") divorced on December 22, 2004. Child was a toddler at the time of the divorce.

The Dissolution Action
The parties' dissolution decree granted them joint legal custody of Child and designated Mother's address as the address of Child for educational and mailing purposes. The trial court found Mother's gross income to be $2,540 per month (from a pizza business awarded to Mother in the decree). It determined Father's gross income to be $7,420 per month (as an employee of New York Life Insurance Company). The trial court's Form 14[2] child support calculation produced a presumed support amount of $771 per month. By agreement of the parties, the trial court deviated downward from the presumed amount and ordered Father to pay Mother child support of $650 per month.

The Modification Action
Both parties remarried. At the time the modification action was triedover portions of five days scattered between June 24, 2008, to July 28, 2009Father had two additional children with his second wife, and Mother had two additional children with her second husband. Father continued to work for New York Life and testified that his income was based upon the productivity of the agents who worked under him during the previous year, plus monthly bonuses paid when an "agent hits a certain amount of income every month. . . ." In 2007, Father's gross income was $194,749.00. From January 1, 2008, to April 25, 2008, Father had earned $74,300.61.
Mother submitted a proposed Form 14 that used a monthly income for Father of $19,415.91an extrapolation from the income Father had earned from January 1, 2008, to April 25, 2008 ($74,300.61). In November 2005, Mother sold the pizza business she had been awarded in the divorce for $115,000 and began working part-time (two days a week) as a self-employed nail technician. Mother, using the income she had earned from January 1, 2008 through June 12, 2008, testified that she made approximately $431.50 per month "gross profit," after paying salon expenses and overhead, and used that figure for her Form 14 income.
Father did not prepare his own Form 14 calculation. Instead, he took photocopies of Mother's proposed Form 14 calculations and re-labeled them as Father's exhibits 33a and 33b.
When the modification trial concluded (in July 2009), Child was eight years old and had been seeing a counselor since March 2006. At the time the modification action was tried, Child was seeing his counselor about once every three weeks. Child had not been seeing a counselor at the time of the parties' divorce. Child's counselor recommended that counseling continue with sessions remaining on the same schedule for awhile, then decrease to once a month, and eventually cease altogether.
*756 After he started counseling, Child was diagnosed as having attention deficit hyperactivity disorder (ADHD). Medication was prescribed, and Child continued to take it at the time the modification action was tried. Under the terms of the dissolution judgment's joint parenting plan, Father was obligated to pay for Child's medical insurance, plus 75% of any uninsured medical expenses. Mother was obligated to pay the remaining 25%. Child participated in Cub Scouts, soccer, and "T-ball." He participated in his enlarged families' events such as trips, camping, and birthday celebrations. Child's counselor testified that the custody arrangement with "[M]other monitoring [Child's] day-to-day school activities" seemed to be working for Child and she hesitated to recommend a change in his school-week schedule. Mother testified that the $650 per month in child support she received from Father did not come close to covering Child's expenses.
The trial court found that, since the time of the parties' divorce, there had been "substantial changes of a continuing nature with regard to the circumstances of the parties such that the original court ordered child support amount of $650 per month is now unreasonable and that the same should be modified. . . ." The trial court found that Mother was "no longer working full time outside the home or on weekends, making [Mother] more available as a child care provider[.]"
The trial court found that none of the Form 14 calculations submitted by the parties were correct and calculated its own. The trial court determined that Father's monthly gross income was $19,416 and that Mother's monthly gross income was $432 per month. Although the presumed amount of Father's child support obligation based on that calculation was $1,547 per month, the trial court found it unreasonable and departed downward to the sum of $1,200 per month. Additional relevant facts will be set forth as necessary in our analysis of Father's points.

Standard of Review
A trial court's decision to modify child support is "reversed only for abuse of discretion or misapplication of the law." Mann v. Hall, 962 S.W.2d 417, 419 (Mo. App. W.D.1998). "Our review . . . is limited to determining whether the judgment is supported by substantial evidence, whether it is against the weight of the evidence, whether it erroneously declares the law or whether it erroneously applies the law." Selby, 193 S.W.3d at 824. In addition, deference is granted to the trial court's superior position to determine the credibility of witnesses. Id. "The trial court is therefore free to believe or disbelieve part, all, or none of the testimony of any witness, and may disbelieve even uncontradicted testimony." Id.

Analysis

Point I: Sufficiency of Evidence of Changed Circumstances
Father's first point states:
The trial court erred in finding that there was a substantial change of a continuing nature with regard to the circumstances of the parties as to make the terms of the court's original child support order of $650.00 per month unreasonable because said finding was not based on substantial evidence in that the original child support order was not based on the Missouri Child Support Guidelines at the time it was entered in 2004 and therefore the presumption that a substantial and continuing change in circumstances exist if the presumed child support amount is different from the current amount by twenty percent or more is not applicable to the case at *757 bar; there was no evidence that the current needs of the minor child are substantially different now than at the time the original child support order was entered in 2004; and there was evidence that Mother voluntarily reduced her income since the entry of the original dissolution decree.
Before addressing his point, we must first deal with Mother's claim that Father failed to preserve this issue for our review. Mother argues that "[t]he trial court's findings and judgments [sic] for increasing [Father's] child support liability can not be challenged on appeal because [Father] failed to follow the law on evidence, in that Father failed to submit any of his own Form No. 14 (Child Support Worksheet) calculations at trial." In support of her claim, Mother cites Ibrahim v. Ibrahim, 825 S.W.2d 391, 398 (Mo.App. S.D.1992); Hackmann v. Hackmann, 847 S.W.2d 193, 194 (Mo.App. E.D.1993), and Boudreau v. Benitz, 827 S.W.2d 732, 737 n. 15 (Mo.App. E.D.1992), as supporting the proposition that a parent "challeng[ing] a child support judgment must have submitted a Form No. 14 at trial or else appellate review is barred."
Father's response to Mother's lack of preservation argument is that the fact that some of his exhibits were the same as Mother's "should not matter as the issue at trial, and on this appeal, is whether there was a sufficient change in circumstances since the original child support order was entered to justify a new support obligation being entered." We agree.[3]
In Ibrahim, a father contested the child support amount awarded at the time of his divorce on the grounds that it did not conform to the requirements of Rule 88.01 regarding the calculation of presumed child support using Form 14. 825 S.W.2d at 397.
In denying the point on appeal, we stated:
On appeal, a party who wishes to challenge the child support award on the basis that it does not conform to the requirements of Rule 88.01 may include in the legal file copies of Civil Procedure Form No. 14 that were before the trial court. [The father] did not do this. He has not shown that he submitted a completed Civil Procedure Form No. 14 to the trial court. This is akin to pursuing a different theory for recovery on appeal than was pursued at trial. As such, "this Court will not, on review, convict a lower court of error on an issue which was not put before it. . . ." Lincoln Credit Co. v. Peach, 636 S.W.2d 31, 36 (Mo. banc 1982).
Id. at 398. In Hackmann, the Eastern District reached a similar conclusion, stating "[f]ather has not filed a Form No. 14. Because Rule 88.01 was mandatory at the time the modification proceeding came to trial, we find all of [f]ather's claims are barred from appellate review under the reasoning of Ibrahim." 847 S.W.2d at 194. In Boudreau, it exercised its power to resolve the child support dispute "[i]n view of the long and bitter nature of this litigation," 827 S.W.2d at 736, but noted
Rule 88.01, formulated in 1989 at the behest of § 452.340.7, RSMo Supp.1989, requires both parties to complete Form 14, which is a worksheet for calculating the "presumed child support amount." The completed forms are to be made part of the record. Here no form or forms were included in the legal file. An appellant seeking relief from a child *758 support award without including these completed forms is doing so at his or her peril. See Ibrahim v. Ibrahim, 825 S.W.2d 391 (Mo.App. S.D.1992).
Id. at 737 n. 15.
Ibrahim has been held not to bar appellate review if the parent does not challenge the trial court's calculation of child support, but instead contests proof of the threshold issue of a substantial and continuing change in circumstances. Bell v. Gilliam, 852 S.W.2d 198, 200 (Mo.App. S.D.1993). Although the mother in Bell failed to file a Form 14, we held that that failure did not bar review of her claim that the required change in circumstances had not been demonstrated.
We do not agree that, under the circumstances of the instant case, this failure [to submit a Form 14] is determinative of this appeal. Here, [mother's] challenge to the child support award is not on the basis that it fails to, but should, conform to the child support guidelines calculated pursuant to Civil Procedure Form No. 14 and presumed correct by Rule 88.01. Rather, her complaint is that [father] failed to satisfy his burden to show a substantial and continuing change of circumstances so as to authorize the modification. Therefore, the instant case is distinguishable from Ibrahim, and the issue here is not controlled by it.
Id. See also Brooks v. Brooks, 871 S.W.2d 42, 44 (Mo.App. E.D.1993) (father's failure to submit Form 14 did not bar appeal where his "challenge is directed only to mother's failure to satisfy her burden to show a substantial and continuing change of circumstances so as to authorize the modification"). Thus, Father's argument in his reply brief that any failure to file Form 14 at trial "would not have precluded him from challenging the trial court's finding that there was a substantial and continuing change in circumstances to warrant modifying the original child support order[ ]" is correct.
Turning now to that challenge, Father offers three arguments in support of his position: 1) Mother could not establish a prima facie case of a substantial change in circumstances by virtue of the difference between child support as stated on the original Form 14 and the trial court's new Form 14 calculation; 2) the evidence did not demonstrate that Child's current needs have substantially changed since the dissolution decree was entered in 2004; and 3) Mother chose to voluntarily reduce her income and Father "should not be penalized for Mother's voluntary actions in selling the business which reduced her income."
First, Father argues that "the presumption that a substantial and continuing change in circumstances exist[s] if the presumed child support amount is different from the current amount by twenty percent or more is not applicable to the case at bar[.]" The referenced presumption is set forth in section 452.370.1,[4] which states:
If the application of the child support guidelines and criteria set forth in section 452.340 and applicable supreme court rules to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable, if the existing amount was based upon the presumed *759 amount pursuant to the child support guidelines.

(Emphasis added).
The basis for Father's argument is that the original child support ordered was not the presumed child support amount of $771 as calculated on Form 14, but was instead the reduced amount agreed to by the parties of $650. Father cites Hueckel v. Wondel, 270 S.W.3d 450 (Mo.App. S.D. 2008) for our statement that:
The twenty-percent provision in section 452.370.1 is inapplicable when the existing child support amount is not based upon the presumed amount under the child support guidelines, and a moving parent must submit other evidence showing a substantial and continuing change of circumstances, such as changes in the parents' respective financial conditions and changes in the child's needs.[[5]]
Id. at 456.
While the parties' briefs primarily address the statutory presumption, it appears that Father is attacking a presumption that was never relied on by the trial courtits modification judgment contains no reference to it. While "[t]he statute provides that a twenty-percent change constitutes a prima facie case of substantial and continuing change; [ ] it does not require that the movant show a twenty-percent change in order to meet his burden of proving a substantial and continuing change." Rogers v. Rogers, 923 S.W.2d 381, 385 (Mo.App. W.D.1996) (emphasis in original). "Instead, a substantial and continuing change in circumstances may be established in other ways." Eaton v. Bell, 127 S.W.3d 690, 697 (Mo.App. W.D.2004). In Hueckel (the very case cited by Father), the modification of child support was affirmed because, even without the statutory presumption of a change in circumstances, there was evidence "that daycare and counseling for the child were now incurred and [f]ather's employment had changed to full-time employment." 270 S.W.3d at 456. As a result, "[s]ubstantial evidence support[ed] a finding that there was a substantial and continuing change of circumstances." Id.[6]
Mother cites In re Marriage of Cook, 636 S.W.2d 419 (Mo.App. S.D.1982) as recognizing that inflation and the needs of a growing child may serve as valid grounds for a modification of child support. Id. at 421. "Inflationary trends and the needs of a growing child are valid reasons for modification if it is demonstrated that these conditions render the original decree unreasonable." Id.[7]
*760 As noted by Father, Mother did not specifically document all of Child's expenses or demonstrate which specific items had increased since the 2004 divorce. The income and expense statement Mother introduced into evidence at the start of the modification trial showed her with an $11,000 per month shortfall that she said was covered by her current husband and credit cards. Mother testified that Child's current monthly expenses totaled $1,240, but she conceded that this amount included an inaccurate amount of $120 for counseling. She also admitted her figures were estimates and "guesstimates."
Nonetheless, "[a] party's testimony as to children's expenses is sufficient evidence upon which to base an award of child support. Such testimony need not be proved with absolute particularity, and the trial court may, at its option, accept or reject such evidence." Davies v. Davies, 887 S.W.2d 800, 804 (Mo.App. E.D.1994) (citation omitted). Mother's testimony was sufficient to prove that Child's needs had increased in the four-and-a-half years that had elapsed between the divorce and the end of the modification trial. Some of those changes were easily predictable at the time of the divorce and some were not. Easily predictable was that Child would change from a preschooler to a student. It could also be anticipated that Child would become involved in extracurricular activities as he grew, but the extent of that future participation is not easily predicted.[8]
The significant changes in this case were not predictable at the time of the divorce. Child's family has grown on both sides to include a total of four other children who both generate and participate in family activities. More importantly, Child was not in counseling at the time of the divorce. That counseling began in 2006 and remained ongoing at the time of the modification trial. During the course of Child's counseling, he was diagnosed as having ADHD and began taking medication. Child's need for counseling is expected to continue for some time.
We defer to the trial court's determination of the credibility of the witnesses and the weight to be given to their testimony. Whether we would have reached the same conclusion based on the evidence presented is not the issue. When we view the evidence in the light most favorable to the judgment, we find that the trial court did not abuse its discretion in determining that a substantial and continuing change in Child's needs had occurred since the time of the divorce.
"Once the party seeking modification has met the burden of showing changed circumstances, the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable Supreme Court Rules." Eaton, 127 S.W.3d at 697; see also section 452.370.2.[9] Father is correct that "an increase in the income of a parent obliged to pay child support is not, by itself, a sufficient reason to increase the award." Bellis v. Bellis, 664 S.W.2d 12, 13 (Mo.App. S.D.1983). "Simply stated, absent proof of increased expenses of the children, the changes in income of Mother and Father are irrelevant." Talley v. Bulen, 193 S.W.3d 881, 886 (Mo.App. S.D.2006). "However, once *761 there is a showing of changed circumstances so substantial and continuing as to make the terms of the existing order unreasonable, the parent's increased income or enhanced wealth becomes a relevant factor in judging his ability to provide greater support." Bellis, 664 S.W.2d at 13 (citations omitted).
Father argues that the trial court erred in finding the original child support order unreasonable because "Mother voluntarily reduced her income since the entry of the original dissolution decree[,]" citing Payne v. Payne, 206 S.W.3d 379 (Mo.App. E.D.2006), for its approval of imputing income to a parent in the proper case as a means of "discourag[ing] parents from deliberately limiting their work to reduce income and thus evade responsibilities to their families[.]" Id. at 384. Father is correct that "[t]rial courts have discretion to impute income to an underemployed or unemployed parent when calculating child support awards." Id. Father's increase in income does not automatically translate into an increase in child support. It also follows that Mother's decrease in earnings does not automatically translate into a decrease in her responsibility to support Child. Talley, 193 S.W.3d at 886.
In any event, an imputation of income to Mother in this case would not help Father for three reasons. First, as discussed above, Father's argument does not address the trial court's finding that Child's needs had grown and changed despite increases or decreases in his parents' incomes. Second, Child entered counseling after Mother sold the pizza business and the counselor recommended that Child's school-week schedule with Mother continue because it was working for Child. "What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case." Payne, 206 S.W.3d at 385. The trial court found that Mother was "no longer working full time outside the home or on weekends, making [Mother] more available as a child care provider[.]"[10] While the evidence would have supported a conclusion by the trial court that Mother could work outside the home a bit more, the trial court did not abuse its discretion in determining that Mother had not deliberately reduced her income as a means of reducing her responsibility to support her family.
Finally, as Mother points out in her brief, "even if the trial court had imputed to Mother her former monthly earnings in the pizza business, [ ] $2,540.25, that would have had little or no impact on [Father]'s modified child support liability as determined by the trial court." When Mother's income as stated on the trial court's Form 14 is replaced with $2,540.25, the presumed child support amount would be $1,275 with credit to Father for overnight visits and no credit to Mother for any additional child rearing costs  an amount still exceeding the $1,200 amount actually ordered by the trial court.[11]
*762 The trial court did not abuse its discretion in determining that a substantial and continuing change in Child's circumstances had occurred since the time of the parties' divorce that made the previous child support amount unreasonable. Point one is denied.

Point II: Sufficiency of Evidence of Father's Income
Father's second point asserts:
The trial court erred in determining the income of Father in calculating the presumed child support amount because said finding was not based on substantial evidence and misapplied the law in that the trial court based its finding on Father's income on the gross amount of money paid to him by New York Life Insurance Company through April 25, 2008 without taking into consideration Father's ordinary and necessary business expenses required to earn that income; and the income imputed to Father of $19,416.00 per month greatly exceeds Father's historical income history and did not take into consideration the downward turn of the economy that will inevitably reduce his income.
As earlier noted, Father adopted Mother's Form 14 calculations as his own. One of the Form 14 calculations submitted by Father showed Father's gross monthly income to be $19,415.91. The trial court used that figure (rounding up .09 to $19,416) on its Form 14 calculation. Father will not now be heard to challenge the very income figure he provided. "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." In re Marriage of Gardner, 973 S.W.2d 116, 126 (Mo.App. S.D.1998). See also Blevins v. Blevins, 249 S.W.3d 871, 875 (Mo.App. W.D.2008) (father cannot invite error by filing a Form 14 that imputed no income to mother and then complain that trial court imputed no income to mother).
Father's second point is also denied, and the judgment of the trial court is affirmed.
BARNEY, P.J., and LYNCH, J., Concur.
NOTES
[1] Both the original dissolution case and the instant action to modify the decree were tried before a family court commissioner, whose recommended findings and conclusions were then adopted by an associate circuit judge as the judgment of the circuit court. We collectively refer to the commissioner and adopting judge as "the trial court."
[2] See Civil Procedure Form No. 14, used pursuant to Rule 88.01. All rule references are to Missouri Court Rules (2009).
[3] But Father's second point goes on to challenge the actual amount of that modified award. It is only at that point that Father's adoption of Mother's Form 14 will prove to be his undoing.
[4] Unless otherwise noted, all statutory references are to RSMo 2000.
[5] "A finding that a party's income increased more than 20 percent, by itself, is not a valid basis for a prima facie showing of a substantial change of circumstances warranting a modification of child support." State ex rel. Boston v. Tuckness, 958 S.W.2d 325, 326 (Mo. App. W.D.1998). However, the increase in a parent's income is still relevant to consider along with other factors. Id.
[6] In Hueckel, the original child support was $375 per month, a downward deviation from the presumed Form 14 amount of $409 per month. 270 S.W.3d at 452. The precise amount of the new child support order was not disclosed in the opinion, perhaps because the father failed to include "facts in his statement of facts to support his allegation regarding a twenty-percent change in the child support amount." Id. at 456.
[7] But, "[w]here the time between the original award and the modification is relatively short, the movant does not carry his burden simply by testifying to predictable general increases in the children's expense due to aging and inflation, since we presume that such factors are taken into account in making the original award." Id. In Cook, less than 14 months had elapsed from divorce to the modification trial and the court gave "the increased age of the children and the effects of inflation little value[.]" Id. Here, the period is much longer.
[8] Certainly it was not easily predictable that Child would be participating in events involving four other siblings he had acquired since the time of the divorce.
[9] Section 452.370.2 provides: "When the party seeking modification has met the burden of proof set forth in subsection 1 of this section, the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable supreme court rules."
[10] In making findings concerning custody, the trial court considered the testimony of Child's counselor and stated:

[C]hildren with "ADHD," which includes [Child], need stability and consistency in their care and home and school environments, and that "ADHD" children do not handle significant changes well, such as a change of school or residential custodian. In fact, the evidence showed such significant changes could be detrimental to [Child], and that [Child] has thrived, been well cared for and made significant progress in coping with his "ADHD" under the current `residential custody' placement with [Mother]. The Court recognizes that [Father] has contributed to [Child]'s care and progress in his treatment of "ADHD."
[11] The trial court found that Mother's income of $432 did "not exceed the amount set forth on the table in the directions for preparation of the Form 14 Worksheet which would entitle a line 11 adjustment."